EDWARD S. KEMPTON, et al, plaintiffs in error, vs. MORRIS L. HALLOWELL & Co., defendants in error.

In a marriage settlement the property was settled in trust among other things, to and for the joint use of the wife and the husband " during their joint lives, but not to be subject, in any way or manner, to the debts, contracts, or engagements," of the husband.

*Held*, [1st.] That the joint estate thus created in the wife did not, by the marriage, pass to the husband, but remained the wife's.

[2.] That her power over the estate was so restricted, that she could not, by endorsing her husband's debts, subject the estate to those debts.

[3.] If the interest of the husband is such under a marriage settlement, that it cannot be seized and sold at law, to satisfy debts against him, without prejudice to the interests of the other parties who take under the settlement, there is a case for equity.

In Equity, in Chatham Superior Court. Decision on demurrer, by Judge FLEMING, at chambers, August, 1857.

This was a bill filed by Morris S. Hallowell & Co.; against Edward S. Kempton, and Anna Virginia Kempton, his wife, and John N. Lewis, trustee, to subject the trust estate created by the marriage settlement executed between Kempton and wife, before marriage, to certain promissory notes signed by Kempton, and endorsed by his wife, to complainants.

The bill alleges, that Edward S. Kempton and Anna Virginia Daughtry intermarried in 1845. That said Anna being possessed of a considerable estate, a marriage settlement was executed, by which she conveyed to Bartholomew Busby, as trustee, all her estate, to hold the same in trust for the joint

Kempton et al. vs. Hallowell & Co.

use of herself and intended husband, during their joint lives, but not to be subject to the debts or contracts, control or engagements, of the said Edward S., and to and for the use of the survivor for life, and after the death of the survivor, then to the issue of the marriage, and if no issue, then in fee to the survivor.

The bill further states, that about 11th December, 1854, the said Edward S. Kempton made six promissory notes, amounting in the aggregate to about $2,800 00, payable to the order of the said Anna Virginia Kempton, who endorsed and delivered the same to complainants, and which said notes have not been paid, either by said Edward S., the maker, or by the said Anna Virginia, the endorser.

The bill further charges, that Mrs. Kempton endorsed said notes with the intention to make the same a charge upon her estate, created in and by said marriage settlement, and said endorsements were so accepted by complainants, and that the interest of said Edward S. and his wife in said estate, is liable and subject to the payment and satisfaction of said notes. That said Edward S. has no property or estate other than the interest he may have in the property mentioned in said settlement, and beyond this he is insolvent.

The bill further states, that John N. Lewis has been substituted trustee in the place of Busby.

The bill prays, that the amount of said promissory notes be decreed to be a lien on the property mentioned in said marriage settlement, and that complainants have execution to be levied on the interest of said Edward S. and wife, in said property; or that said trustee be decreed to pay the rents and profits of said estate to complainants, until said debts shall be fully paid, and upon his failure so to do, that a receiver be appointed, who shall take charge of said estate, and hold the same until said notes be fully paid out of the income and profits thereof.

The marriage settlement, after reciting that a marriage is contemplated between the parties of the first and second

parts, and conveying the estate to Bartholomew Busby, declares that he shall hold the same: "In trust, nevertheless, to and for the sole use, benefit, and behoof of the said Anna Virginia, until the marriage shall take place, and from and immediately after the solemnization of said intended marriage, to and for the joint use and benefit of the said Anna Virginia and Edward S., during their joint lives, but not to be subject in any manner to the debts, contracts, or engagements of the said Edward S., and to and for the use, benefit, and behoof of the survivor of the said Anna Virginia Daughtry and Edward S., and to and for the use, benefit, and behoof of the survivor of the said Anna Virginia Daughtry, and from and after the death of the said survivor, then on trust, that the said Bartholomew Busby, his executors, administrators, or assigns, will deliver the same to the issue of said intended marriage, share and share alike, free from any trust. But if the said Anna Virginia should die in the lifetime of the said Edward S., her said intended husband, without leaving any issue living at the time of her death, then in trust, that the said Bartholomew Busby, his executors, administrators, or assigns, will transfer and deliver over to the said Edward S., all the property and estate herein contained and conveyed, free from any trust, and it is understood, covenanted, and agreed, by and between the parties to these presents, that it shall and may be lawful for the said trustee, or any trustee who shall or may be appointed in lieu of said Bartholomew Busby, to bargain, sell, or dispose of any or all the said property, present or future, upon the wish and approbation of the said Anna Virginia, and Edward S., and the survivor of them, which said approbation shall be signified in writing, investing, preserving, and disposing of the proceeds of said sale or disposal, upon the uses and trusts hereinbefore mentioned."

Dated 4 *Dec.,* 1845.

To this bill, defendants filed a general demurrer, which,

Kempton et al. vs. Hallowell & Co.

after argument, the Court overruled, and counsel for defendants excepted.

BACON & LEVY, for plaintiffs in error.

LLOYD & OWENS, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

The object of the bill, is to subject the property mentioned in the deed of marriage settlement, to the payment of the notes of Kempton, endorsed by his wife to the complainants.

The bill was demurred to for want of equity, and the demurrer was overruled.

Ought the demurrer to have been overruled? In other words, was there equity in the bill?

If the deed created a property or estate in the wife, which did not, on marriage, pass to the husband, but remained the wife's, and if, by endorsing his notes, she bound this property or estate, then there was equity in the bill. This may be assumed.

And even if the deed created no such property or estate in the wife, but yet created such estates in the husband, and in the remainder-men, that the estate of the husband could not be reached at law without prejudice to the estate of the remainder-men, then, too, there was equity in the bill. This, also, may be assumed.

First then, did the deed create any estate in the wife, which, on the marriage, did not pass to the husband, but remained the wife's?

The words of the deed, bearing on this point, are these:

"In trust, nevertheless, for the sole use, benefit, and behoof, of the said 'Anna Virginia, until the marriage shall take place; and from and immediately after the solemnization of said intended marriage, to and for the joint use and benefit of the said Anna Virginia and Edward S., during their joint lives, but not to be subject, in any manner, to the

debts, contracts, or engagements, of the said Edward S.; and to and for the use, benefit, and behoof, of the survivor of the said Anna Virginia Daughtry and Edward S.; and from and after the death of the said survivor, then, in trust, that the said Bartholomew Busby, his executors, administrators, or assigns, will deliver the same to the issue of the said intended marriage, share and share alike, free from any trust. But if the said Anna Virginia should die in the lifetime of the said Edward S., her said intended husband, without having any issue living at the time of her death, then, in trust, that the said Bartholomew Busby, his executors, administrators, or assigns, will transfer and deliver over to the said Edward S., all the property and estate, herein contained and conveyed, free from any trust."

The property, from and after the marriage, was to be held for the "joint use" of the husband and wife, but so, as "not to be subject, in any manner, to the debts, contracts, or engagements," of the husband.

The effect of the words "joint use," was, to create an estate in the husband, and also an estate in the wife, and to make these two estates joint; the effect of the other words was to fix, in the wife, the estate created in her, and to prevent it from being, by the marriage, taken out of her, and passed into the husband. The whole effect of both sets of words, taken together, was to make her, and her husband, hold, as they would have held, if they had not been husband and wife.

The words "not to be subject, in any manner, to the debts, contracts, or engagements," of the husband, can operate so far as the estate created in the *wife* is concerned; although it may be true, that they cannot operate so far as the estate in the husband is concerned. And if they are to have any operation whatever, it must be an operation by which the estate in the wife, is to be *hers* and not *his*, although it may be, that she may have to hold it *jointly* with him, in other words, it must be an operation by which, though she is to

Kempton et al. vs. Hallowell & Co.

have, not an estate, in severalty, as contradistinguished from the estate in joint tenancy, yet, by which she is to have an estate in severalty, as contradistinguished from the ordinary estate in the wife which by marriage merges in the husband. This is the least operation the words can have, if they are to have any. This operation, then, we think the words do have.

[1.] The practical result is, that as, to, say, a half interest in the property, the wife took what, is equivalent to, a separate estate.

Did she bind this interest, by indorsing her husband's notes?

Whether, when the wife has property settled to her separate use generally, without restriction as to alienation, but with no grant of the power of alienation, she can dispose of the property, to the use of her husband, is a vexed question. *3 Johns. Ch. R.* 77. I incline to think that she can not. A married woman has not capacity to contract, and therefore, the contracts of a married woman are void. That this is the general principle of the common law, nobody, I believe, disputes. Can her having separate property make any difference in this respect? However, I hold myself open on this question.

But when the property is not settled to the wife's separate use generally, but is settled to her use, subject to a restriction against alienation, then, there is no question, I believe, but that she is, to the extent of the restriction, debarred from the power of alienation.

Is there any such restriction, then, in this settlement?

We think there is. The words, " not to be subject, in any manner, to the debts, contracts, or engagements," of the husband, have, as we think, the effect, not only to prevent the estate created in the wife, from passing, by the marriage, into the husband, but also, the effect to deprive her of the power of subjecting that estate, *in any manner*, to the debts of the husband. To this extent, at least, we think they restrain her power of disposing of this estate.

But, if they restrain her from subjecting the property, *in any manner*, to the debts of her husband, they restrain her from subjecting it to those debts, by the manner of guarantying or endorsing those debts. And that is the manner which she adopted in this case; she endorsed his notes. True, she, as endorser, represents, it may be said, an independent contract of her own; but then, if this estate of hers, pays that contract, it, thereby, pays the other contract, the debt of the husband, so far as the present holders of the debt are concerned; and thus, in that case, her estate will in one "manner" have been "subject to the debts" of her husband.

[2.] We think, then, that, by virtue of these same words, her power over her estate was so restricted, that she could not by endorsing her husband's notes, subject the estate to the payment of those notes.

The result, thus far, is, that we think, that the wife had by the deed, what was equivalent to a separate estate; but that this estate was so restricted, that she could not, and therefore did not, bind it, by her endorsements made on her husband's notes; and, consequently, the result thus far is, that there is in our opinion no equity in the bill, as to this estate in the wife.

This is the result as it respects Judge Lumpkin and myself.

Judge McDonald thinks, I believe, that the words create no separate property in the wife; but then, he also thinks, that she has *an equity*, which entitles her, to as much as she can get by the result at which we, the other two Judges, have arrived. Hence, he does not see fit to dissent from that result.

[3.] Say, then, that the wife and the husband, take each, an equal interest in the property; and, for convenience sake, let us assume this interest to be one-half. Is the half in the husband, such an interest, that it could not be reached by these creditors, without prejudice to the other interest in the property? We think that it is. It is difficult to see how

there could be any sale of the property, or of any interest in it, to satisfy these debts, without prejudice to the interest of the wife, and that of the issue of the marriage.    The better way is, that so much of the income, as the husband is entitled to, be paid, under the decree of a Court of Equity, to the creditors, instead of to him.

In this view of the case, we agree with the Court below—restricting the view to the share of the property which, we say, the husband takes.

There remains but one other question.   These creditors had not reduced their debts to judgment, when they commenced the suit.    But they say, that Kempton is wholly insolvent, except as to his interest under the trust deed.    This, we think, was reason enough to justify a suit before the debts had been reduced to judgment.    In such a case, getting judgment would be a waste of time, labor, and money, without any compensation.

Judgment affirmed.