### ÆTNA INS. CO. v. BRODINAX *et al.*

*(Circuit Court, S. D. Georgia. April Term, 1883.)*

**1. WIFE'S SEPARATE ESTATE—POWER TO CHARGE—INSTRUMENT OF SETTLEMENT.**
Code, § 1783, declares that "the wife is a *feme sole* as to her separate estate, unless controlled by the settlement. Every restriction on her power must be complied with. But, while a wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband." *Held,* that where a husband settled property on his wife free from all his liabilities, except such incumbrances as the two together shall request the trustee to make, a mortgage given thereon to secure a debt of the husband is valid.

**2. SAME.**
Such an exception is not repugnant to the grant, but is merely a qualification thereof. Affirmed in 9 Sup. Ct. Rep. 61.

In Equity. Suit by the Ætna Insurance Company against Martha Brodinax and others to foreclose a mortgage. Decree for plaintiff.

*Joseph Ganahl,* for complainant.

*J. B. Cumming* and *Geo. A. Mercer,* for defendants.

McCAY, J. On the 11th day of June, 1866, Benjamin E. Brodinax, of the county of Richmond, Ga., executed a deed in due form under the laws of Georgia, and in consideration of his love for his wife, Martha Brodinax, to a certain parcel of land in said county to William E. Brodinax, in trust for the said Martha during her life, with other limitations not here important to be considered. The deed contained various other

provisions, as for the alienation and reinvestment of the estate; for the appointment of a new trustee in case the trustee, Brodinax, should fail to act, or die; also, for the making of liens and mortgages on the property,— in each of which cases it was provided that the husband and wife should, in writing, join in what was done. The deed declared that the property should be for the use, benefit, and behoof of the said Martha, free from the debts, contracts, and liabilities of her present or any future husband, except such incumbrances or liens as by the written direction of the grantor and the said Martha might be made thereon. W. E. Brodinax accepted the trust. In January, 1858, he resigned, and the grantor and wife in writing appointed Ephraim Twedy as successor, who accepted. On the 14th of June, 1866, three days after the date of the deed, the trustee, in pursuance of the written request of the grantor and wife, executed a mortgage deed of the premises to the treasurer of the Soldiers' Loan & Building Association, a body corporate, to secure the loan of $2,000. On the 11th of May, 1867, the trustee, in pursuance of the written request provided for in the deed, executed another mortgage to the complainant for $3,000; the same being a debt due by note from the said Benjamin to the complainant. On the 4th of December, 1868, the complainant bought the first mortgage, and this bill is filed to foreclose these two mortgages. The defense set up is practically as follows: That both the debts secured by the mortgages were the individual debts of Benjamin E. Brodinax, and that under section 1783 of the Georgia Code it is illegal for the wife to pledge her separate estate to secure her husband's debts. Issue was taken as to the debt covered by the first mortgage, and, though the wife testified that she got no part of the proceeds of the said debt, yet it did not appear very clearly that the trustee did not, nor in fact whose debt it was, nor what was the consideration. As, however, under the view I take of the case, it is wholly immaterial whether it was the debt of the wife or the husband, it is unnecessary to go into that question.

The sole question in the case is whether, under such a deed, it is competent for a married woman, under the laws of Georgia, to pledge the estate granted for her husband's debts. By the terms of the deed it was to be free from the contracts, debts, and liabilities of the husband, except such liens and incumbrances as they might jointly, in writing, agree to place upon it. This language can have but one meaning. It is an exception to the clause of the deed which declares the property was not to be subject to the debts, etc., of the husband, and the inference is almost conclusive that the intent was to say, unless these debts, etc., are by the written direction of both husband and wife, by special lien or incumbrance, made such a charge thereon. It has been argued that this provision was inconsistent with the grant, and therefore void; but it is well settled that such restrictions on a separate estate to a married woman are not to be construed like restrictions on a legal estate to persons *sui juris*. The wife has only such power as the deed gives her, and the whole deed is to be taken together. An inconsistency, to be void, must be totally inconsistent,—must destroy the estate; if it only fetter it or qualify,

it is still good. 2 Story, Eq. Jur. §§ 1382–1384, and the cases there referred to. See, also, Kempton v. Hallowell, 24 Ga. 52. And this is the law of Georgia, even of legal estates to persons *sui juris*. Section 2697, Code 1873. So that this case must turn, as I think, solely on the special provision of the Georgia Code of 1873. That Code, in substance, provides, first, that, to create a separate estate in the wife, no words of separate use are necessary; the appointment of a trustee, or any words sufficient to create a trust, is enough. Section 2307, Code 1873. Hence, under this deed, a separate estate would be created, although no words of separate use are used. The Code also provides as follows, (Code, § 1783:)

"The wife is a *feme sole* as to her separate estate, unless controlled by the settlement. Every restriction on her power must be complied with. But, while a wife may contract, she cannot bind her separate estate by any contract of securityship, nor by any assumption of the debts of her husband; and any sale of her separate estate to a creditor of her husband in extinguishment of his debts shall be absolutely void."

It may be added that the supreme court of Georgia, before the adoption of the Code, had established the doctrine that, however general the words of a deed to a married woman were, yet if it provided, as does this, that the estate was to be free from the debts, contracts, etc., of the husband, these were words of restriction upon the wife, and she could not pledge her estate for her husband's debts. Taking these decisions and the provisions of the Code together, it is contended that, admitting the words of this deed to be a power to so pledge, yet nevertheless the power does not exist, because such a power is illegal, contrary to the statutes, and therefore void. It is claimed that, whatever may be the words of the deed, however strong the language of the grantor, it is illegal, and therefore impossible for him to make it one of the terms of the grant that the grantee, if she be a married woman, shall have power to pledge the estate for the debt of her husband. It is claimed that the statutes plainly indicate it to be contrary to the policy of the law that a married woman shall, under any circumstances, have such a power. Without question, if she be restricted by the terms of the deed, or if the deed be general, she would not have that power. But here is a case where the power is expressly declared. There is first a separate estate created in the wife, and this is plainly upon condition on the part of the grantor that he and the wife may put liens upon it to secure his contracts and liabilities. This property belonged to the husband. Of his own free will, and for the love he bore his wife, he gives it to her on these terms. Did she ever get any estate except according to these terms and with this power? What was the intent of the statutes? Plainly, to protect the wife in the estate granted; to provide that, if anybody saw fit to give a married woman an estate with the expressed intent that it should be for her benefit, she should neither be "kicked nor kissed" into an appropriation of it, and to declare that any separate estate coming to her other than by deed, or in any unqualified way, shall not be capable of being used by her to secure her husband's debts, or to discharge them. This

clause, however, it will be noticed, does not declare that a deed granting an estate to a married woman may not qualify that grant by declaring that she shall have power so to pledge it. It is perhaps wise enough that the law should restrict her when the deed is silent, or when she becomes the unqualified owner of a separate estate. It is fair enough to infer that, if one intends a married woman to have an estate, she shall not be subject to the influences of her husband for its appropriation to the security or payment of his debts. But, if the grantor expressly says that she shall have such power, is not the inference that she cannot exercise that power a most shocking one? The mistake is in supposing that it was the intent of the law to protect the wife,—to establish a rule of domestic or marital economy that under no circumstances shall a "Georgia" wife be in such a position as that she shall be capable of using an estate for the payment of her husband's debts, even if the grantor of that estate so expressly declared, or even if that be one of the terms of the deed in which the grant is given. To lay down such a rule would, as I think, be a great wrong to married women. Many a husband would be willing to settle property on the wife, provided she had the power to come to his relief on proper occasions, who would refuse to do so if in such a contingency she was to be powerless. Many a father-in-law would be willing to settle property on his son's wife, provided she had such power, who would decline to do so if she was to be powerless in case of pecuniary trouble on the part of the husband. And this view of the meaning of this section is in harmony with the history of separate estates and with several other instances in the law of disability put upon persons for the performance of otherwise legal acts. At common law, a wife could make no contracts, sell no land, could not even make a will; yet it was always held that, if the instrument creating an estate gave such a power, even a married woman might execute it. So, too, an infant may, by a deed creating an estate in his favor, be clothed with power to dispose of it by will before he becomes capable of making a will generally. Indeed, it may be stated as a general rule that, if an instrument creating an estate provide for some specific mode of its disposition, it not only must be disposed of in that way, but that it may be sold and disposed of in that way although the person to whom the power is given, would not, under the general law, have a capacity to do such acts. And this proceeds in the idea that the owner of property has power to dispose of it, or provide for its disposal, at his discretion.

The contention that this provision of the Georgia Code is intended to declare it to be the policy of the state that under no circumstances shall a married woman have such a power seems to me far-fetched, and calculated to place an unnecessary and unnatural restraint upon the disposition of property to married women. The Code is, in my judgment, intended, not to protect the wife, but to protect the estate granted to her; to carry out either the expressed or the presumed intentions of the grantor, and, generally, to say, if she have an estate to her separate use, she shall not dispose of it to pay her husband's debts. This is a different thing entirely from the case at bar, where it is distinctly provided, if the

wife see fit,—if she and her husband concur in writing,—that such a power shall exist. She only gets the estate on these terms, and to say that she shall not exercise the power thus expressly granted is to confer on her an estate never contemplated by the grantor. Nor, as it seems to me, is there any analogy between a case like this and the case of a limitation over contrary to law or to public policy, as conditions in the restraint of marriage, and the like. These cases, as their history shows, turn upon the public evils growing out of such limitations and restrictions, while the history of this provision shows an intent to protect the estate of the wife, and not to establish such a rule of the marital relations as would say that it shall be illegal for a grantor to put the wife in any such situation. Upon the whole, therefore, I am of the opinion that the original deed conferred upon the wife the power here complained of, and, that being the case, the mortgages are good, even though they be securities for the debt of the husband.

Something was said in the argument to the effect that, as a second mortgage was made to secure a past-due debt of the husband, it was therefore without consideration; but, if this was his debt, it comes within the scope and intent of the deed, whether then due or merely then contracted. The husband made the deed on these terms, and, if this was his debt, the deed gives her power by joining in a written request to secure it.

Ordered that a decree of foreclosure for the amount due be entered upon the minutes of the court.